**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MODESTO RIGUEIRO-ORRUELA, | CASE NO. 4:25-CV-02340-CAB |
| Petitioner, | JUDGE CHRISTOPHER A. BOYKO |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| DIRECTOR OF THE DETROIT ICE FIELD OFFICE, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On October 28, 2025, Petitioner Modesto Rigueiro-Orruela filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. (ECF #1). He asserts his continued detention by Immigration and Customs Enforcement (ICE) pending removal is unlawful, so he requests release. (*Id.* at PageID 9). On November 18, 2025, this case was referred to me for preparation of a Report and Recommendation. (Non-document entry dated Nov. 18, 2025). That day, I directed Respondent to show cause why the writ should not be granted. (ECF #6). On December 8, 2025, Respondent filed an Answer and Return of Writ. (ECF #9). Petitioner replied to Respondent's submission (ECF #11) and, at my request (ECF #12), Respondent filed a sur-reply (ECF #13) to which Petitioner provided a brief response (ECF #14). Having reviewed the parties' submissions and applicable law, I recommend the District Court **GRANT** the petition.

BACKGROUND

Bradley Shaver, a deportation officer in the Cleveland sub-office of Enforcement and Removal Operations (ERO) for ICE, reviewed ICE's official records and provided a declaration in response to the petition. (ECF #9-1 at PageID 32-35). According to Officer Shaver, ICE records show Petitioner entered the United States as a legal permanent resident on November 25, 1953 when he was less than 2 years old. (*Id.* at PageID 32). He served in Vietnam with the U.S. Marine Corps from 1969 to 1971 and was honorably discharged. (*Id.*). After serving in Vietnam, Petitioner was convicted of several offenses in Ohio, including possession of stolen property and armed

1

robbery in 1972 and receiving stolen property, selling marijuana, two counts of aggravated murder, attempted murder, and escape from custody in 1980. (*Id.* at PageID 33). He was sentenced to two terms of life in prison for aggravated murder, 7 to 25 years for attempted murder, and 6 months to 5 years for escape, all to be served consecutively. (*Id.*).

In 1985, ICE issued an Order to Show Cause and Notice of Hearing. (*Id.* at PageID 34). In 1989, Petitioner conceded his deportability under then §§ 241(a)(4) and (11) of the Immigration and Nationality Act (INA).[1] (*Id.*). His later application for relief under § 212(c) was denied in 1990 and he was ordered deported and removed to Spain. (*Id.*). The Board of Immigration Appeals denied his appeal in 1991. (*Id.*). Later attempts to reopen his case and stay his removal were unsuccessful. (*Id.*).

On April 14, 2025, having completed 45 years of incarceration for his state criminal offenses, Petitioner was granted parole. Rather than being released, he was immediately taken into ICE custody. (*Id.*). On July 8, 2025, ICE completed a Post Order Custody Review and continued Petitioner's detention because of his extensive criminal history and because ICE was working to secure a travel document. (*Id.*). According to Officer Shaver, ICE is facilitating Petitioner's deportation to Spain or a third country. (*Id.* at PageID 35). ICE denied any institutional barriers that would prevent it from removing him in the reasonably foreseeable future. (*Id.*).

In his petition and response to Respondent's Answer, Petitioner asserted he visited the Spanish Consulate twice in July 2025 and was issued travel documents on the second encounter on July 22, 2025, but "deportation never happened," and he was told that "Spain stopped the departure." (ECF #1 at PageID 8; ECF #11 at PageID 43). He also said that after Spain halted the removal, he asked ICE if Guatemala would be a suitable alternative destination for removal but, as of December 22, 2025, he had not received a response. (ECF #11 at PageID 43). I concluded these

---

[1] The former version of § 241(a) of the INA, 8 U.S.C. § 1251(a), that applied in 1989 when Petitioner conceded deportability, provided that an alien shall be deported "who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial." 8 U.S.C. § 1251(a)(4). Under that statute, an alien was also to be deported if the alien was convicted in violation of "any law or regulation relating to the possession of or traffic in narcotic drugs or marihuana." 8 U.S.C. § 1251(a)(11). Those provisions have since been transferred to 8 U.S.C. §§ 1227(a)(2)(A)(ii) and (B).

facts, which strongly suggest that Spain would not accept Petitioner, provided sufficient "good reason to believe" that Petitioner's removal is unlikely in the reasonably foreseeable future, and I invited Respondent to respond with evidence sufficient to rebut that showing. (ECF #12). In reply, Respondent provided that "ICE is currently working to facilitate Petitioner's deportation to Spain or a third country" and "is not aware of any institutional barrier to prevent the removal." (ECF #13). No specific details regarding ICE's efforts were disclosed. Moreover, Respondent acknowledged Petitioner's claim that Spain prevented his removal to that country but did not dispute it nor offer any other explanation for the delay in removing Petitioner. (*Id.* at PageID 55). Respondent then requested that if the Court finds Respondent did not rebut Petitioner's showing of good cause the Court allow ICE to place Petitioner on supervision consistent with the applicable statute and regulations. (*Id.*).

LAW AND ANALYSIS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Under 28 U.S.C. § 2241, federal courts may grant habeas corpus relief to persons who are "in custody in violation of the Constitution or laws or treaties of the United States." The writ extends to noncitizens who are in custody for immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

Petitioner is detained under 8 U.S.C. § 1231, which provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). This is known as the "removal period." "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Typically, once the removal period expires, rather than being detained, the alien is "subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). But "[a]n alien ordered removed who . . . has been determined by the Attorney General to be a risk to the community . . . may be detained beyond the removal period." *Id.* § 1231(a)(6).

Petitioner's 90-day removal period began on April 24, 2025, when he was released on parole from his state criminal sentence and taken into ICE custody. *See id.* § 1231(a)(1)(B)(iii). It expired on July 23, 2025. Respondent concedes Petitioner "is now outside of the 90-day removal

period during which the government shall detain the individual." (ECF #9 at PageID 26) (quotation omitted). But Respondent argues Petitioner remains subject to continued detention inasmuch as "he has been deemed a risk to the community because of his multiple aggravated felony convictions." (*Id.* at PageID 27). In his declaration, Officer Shaver stated under penalty of perjury that ICE completed a Post Order Custody Review and continued Petitioner's detention "based on [his] extensive criminal history and the fact that ICE was in the process of securing a travel document." (ECF #9-1 at PageID 34). Officer Shaver did not attach documentation of that decision but, assuming that to be true, Petitioner may be detained beyond the 90-day removal period under § 1231(a)(6).

The Supreme Court has declared the government may not extend detention beyond the 90-day removal period "indefinitely" under § 1231(a)(6). *See Zadvydas*, 533 U.S. at 682. The Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" that "limits an alien's post-removal detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. Detention of a noncitizen subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish removal. *Id.* at 701. As the Court explained:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with *evidence* sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. The 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* (emphasis added). Additionally, "the risk of the alien's committing further crimes" is "a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

If the government fails in its obligation to offer sufficient evidence to rebut the noncitizen's showing, the noncitizen must be released on conditions of supervision. *Id.* at 699-700. Importantly, a petitioner need not show that removal will prove impossible, only that there is no reasonable likelihood of removal in the foreseeable future. *Id.* at 702.

Petitioner's six-month period expired on October 14, 2025. As of the date of this Report and Recommendation, Petitioner remains in ICE custody at the Northeast Ohio Correctional Center. *See Online Detainee Locator System,* http://locator.ice.gov/odls/ (search with first and last "Modesto Rigueiro-Orruela" and country of birth of Spain) (last accessed March 18, 2026). Thus, his detention is outside the 6-month period where it is presumptively reasonable under *Zadvydas*.

Turning to whether Petitioner has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, as described above, Petitioner asserted he was issued travel documents to Spain but "deportation never happened," and he was told that "Spain stopped the departure." (ECF #1 at PageID 8; ECF #11 at PageID 43). He also said that after Spain halted the removal, he asked ICE if Guatemala would be a suitable third country but, as of December 22, 2025, he had not received a response. (ECF #11 at PageID 43).

I invited Respondent to rebut Petitioner's assertions. Respondent acknowledged Petitioner's claim that he was previously issued Spanish travel documents, but Spain halted his removal. (ECF #13 at PageID 55). Respondent simply reiterated, without any supporting explanation, that "ICE is currently working to facilitate Petitioner's deportation to Spain or a third country" and ICE "is not aware of any institutional barrier to prevent the removal." (*Id.*). Additionally, Respondent did not indicate whether ICE had requested the reissuance of travel documents, Spain had received the request, or Spain would be issuing travel documents soon, or suggest whether Spain has issued travel documents for other removed aliens. Respondent also did not address whether Petitioner could be removed to Guatemala instead of Spain. The record contains Respondent's naked assertion that "ICE is currently working in coordination with ICE HQ Removal and International Operations ('RIO') to facilitate the Petitioner's deportation to Spain or a third country." (ECF #9-1 at PageID 35).

I conclude the information presently before the Court suggests that Spain may not issue Petitioner the travel documents necessary to effectuate his removal. This means the government is, for the moment, incapable of removing him to Spain. As for removal to Guatemala (as Petitioner suggested) or a third county, Respondent has provided no meaningful details. Combined with the fact that Petitioner has remained in custody well beyond the 90-day removal period, there is "good reason to believe" that Petitioner's removal is unlikely in the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 701. Ordinarily, "mere delay by the foreign government in issuing travel

5

documents, despite reasonable efforts by the United States to secure them, does not satisfy a detainee's burden under *Zadvydas*" without more. *Rawahna v. Att'y Gen. of the U.S.*, No. 1:18-cv-175, 2018 WL 3023438, at *3 (S.D. Ohio June 18, 2018) (collecting cases). Petitioner does not claim the Spanish government is simply taking too long to issue travel documents, but instead asserts facts indicating Spain affirmatively refused – indeed, blocked – his removal. Despite being given an opportunity to do so, Respondent did not contest Petitioner's allegations in this regard. As such, his case differs from cases Respondent cites, finding extended detention constitutional when faced with no facts to support the petition and a declaration by the government that it would. (*See* ECF #9 at PageID 28) (citing *Jiang Lu v. U.S. ICE*, 22 F.Supp.3d 839, 843 (N.D. Ohio 2014) and *Yahya v. Att'y Gen.*, No. 2:17-cv-1021 and 2:17-cv-1073, 2018 WL 3145172, at *2 (S.D. Ohio June 27, 2018), *report and recommendation adopted*, 2018 WL 3496412 (S.D. Ohio July 20, 2018)). Respondent failed to respond with any evidence rebutting Petitioner's showing that there is "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Additionally, Respondent points to *Mulla v. Adducci*, 178 F.Supp.3d 573, 576 (E.D. Mich. 2016), in which petitioner's detention for nearly one year was held reasonable because the United States had a repatriation agreement with the country to which the alien was to be deported, travel orders were issued in the past, the repatriation country had not refused to reissue travel orders, and the typical timeframe from the request to issue travel orders had not lapsed. (ECF #9 at PageID 27). But the facts of that case fundamentally diverge from those in this case, and so that holding is not controlling here.

In *Mulla*, the petitioner was a Pakistani citizen and a lawful permanent resident of the United States. *Id.* at 574. He was placed in removal proceedings after he was convicted of conspiracy to possess and distribute cocaine and ordered removed. *Id.* He appealed the order of removal, and the Board of Immigration Appeals (BIA) remanded the case. *Id.* When the immigration court entered a second order of removal, the petitioner moved to reopen the proceedings in the immigration court and filed an application for asylum, both of which were denied. *Id.* His next application to reopen was also denied, as was his petition for review in the Sixth Circuit. *Id.* Then, ICE placed the petitioner on GPS monitoring and worked to obtain travel documents for his removal. *Id.* ICE returned him to custody when the Pakistani government

"responded encouragingly to ICE's initial request for a travel document." *Id.* at 575. The petitioner was issued a travel document valid for July 2015, but he filed another motion to reopen his removal proceedings and a motion for stay of removal on the day of his scheduled removal, which the BIA granted. *Id.* At a hearing on the habeas petition, an ICE agent testified that ICE made a second request to Pakistan for travel documents; acknowledged that the process to obtain travel documents became more complicated since July 2015; "candidly informed the Court" that the Pakistani government added another layer of security screening to its travel-document issuance process (resulting in longer waiting periods for issuance, closer to six months); and the Pakistani government had not suggested a reluctance to issue a second travel document, but the agent had not received a positive response either. *Id.* The district court determined petitioner had not provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future because "much of the delay has been attributable to the petitioner's own efforts at pursing remedies to forestall or reverse the deportation order," evidence suggested he would probably receive travel orders from Pakistan within the next couple of months, travel orders were issued in the past, Pakistan had not refused to reissue the travel orders, and the typical timeframe from request to issuance had not lapsed. *Id.* at 577.

As noted, *Mulla* is not analogous to the present facts. First, no similar level of delay can be attributed to Petitioner. Petitioner made two filings: an N-600 application for derivative citizenship through his father filed on November 18, 2024, and a motion to reopen his immigration proceedings and stay removal filed on April 24, 2025. (ECF #9-1 at PageID 34). The motion was denied on September 23, 2025 and the N-600 was denied on October 21, 2025. (*Id.*). In *Mulla*, the petitioner similarly sought and received administrative relief from removal, but after a second order of removal, he filed three more applications for relief and a petition for review in the Sixth Circuit. 178 F.Supp.3d at 574. Then, once issued a travel document, he sought and received a stay of removal, after which the document expired. *Id.* at 575. Here, while there was some delay while resolving the N-600 application and the motion to reopen, the delay is more attributable to Spain than Petitioner given that he was issued travel documents but "deportation never happened" and "Spain stopped the departure." (ECF #1 at PageID 8; ECF #11 at PageID 43).

Second, Respondent has not advanced any facts suggesting the Spain and Pakistan are similar in how they accept deportees from the United States. The court in *Mulla* noted the United

7

States had a repatriation agreement with Pakistan, Pakistan had issued travel orders the summer before, Pakistan had not refused to reissue travel orders, and the timeframe ICE estimated for Pakistan to issue travel orders upon request had not lapsed. While it is likely Spain and the United States have a repatriation agreement, *see Crespo v. Baker*, No. 11-cv-3019, 2012 WL 1132961, at *3 (S.D. Cal. Apr. 3, 2012) (listing Spain as having an agreement with the United States alongside Sweden and Mexico), Officer Shaver does not explicitly state so. Officer Shaver does not state whether Spain has recently issued travel documents or accepted deportees. Nor does he state if ICE requested a new travel document from Spain, let alone estimate when Spain might act on such a request. Petitioner has advanced facts that Spain did previously issue him a travel document, stopped his removal. Thus, the reasons supporting extended detention in *Mulla* do not apply here.

Additionally, "the risk of the alien's committing further crimes" is "a factor potentially justifying confinement within that reasonable removal period." *See Zadvydas*, 533 U.S. at 700. Petitioner has been convicted of multiple very serious offenses, including aggravated murder. (*See* ECF #9-1 at PageID 33). This could suggest extended detention here would be constitutionally reasonable. Yet the Ohio Parole Board determined that, after 45 years of incarceration, release was nevertheless appropriate subject to supervised release. (ECF #11-1). Respondent seemingly agrees, stating that if Petitioner is released, "ICE respectfully requests that this Court permit the agency to subject Petitioner to supervision" under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. (ECF #13). Thus, the concern for further crimes that might justify extended detention are allayed by release subject to both the terms of his state supervision and any terms of supervision imposed by ICE.

I thus conclude Petitioner has shown good cause to believe his removal is not likely in the reasonably foreseeable future and the Respondent has not advanced evidence sufficient to rebut the Petitioner's showing. *Zadvydas*, 533 U.S. at 701. Thus, "[t]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances" *Id.* at 700. Therefore, I recommend the District Court grant Petitioner's petition and order Respondent to release him on suitable terms of supervision that allow Petitioner to meet the terms of his parole from state custody.

CONCLUSION AND RECOMMENDATION

After review of the parties' submissions and applicable law, I find Respondent has not rebutted Mr. Rigueiro-Orruela's showing of good cause and recommend the District Court grant his petition and order the Respondent to release him on suitable terms of supervision consistent with 8 U.S.C. § 1231(a)(3).

Dated: March 18, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<u>Objections, Review, and Appeal</u>

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.*, **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green*, **No. 1:17-CV-00186, 2018 WL 3018175, at \*2 (W.D. Ky. June 15, 2018) (quoting** *Howard*, **932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega*, **924 F.3d 868, 878-79 (6th Cir. 2019).**

9