**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MODESTO RIGUEIRO-ORRUELA,**<br><br>**Petitioner,**<br><br>**vs.**<br><br>**DIRECTOR OF DETROIT FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, KEVIN RAYCRAFT**<br><br>**Respondent.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 4:25-CV-02340**<br><br>**JUDGE CHRISTOPHER A. BOYKO**<br><br><br><br><br><br><br><br>**Memorandum of Opinion and Order** |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on Petitioner Modesto Rigueiro-Orruela's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention under 8 U.S.C. § 1231(a)(6). (ECF #1). Magistrate Judge Darrell A. Clay issued a Report and Recommendation ("R&R") recommending that this Court grant the Petition. (ECF #17).

Respondent, Director of the Detroit Field Office of United States Immigration and Customs Enforcement[1] ("ICE") filed his objection to the R&R. (ECF #18).

## I. BACKGROUND

The Magistrate Judge's R&R set forth a thorough factual and procedural history of this matter. (ECF # 17). For brevity, the Court summarizes only the facts relevant to Petitioner's detention.

---

[1] Department of Homeland Security ("DHS") and ICE will be used interchangeably throughout this Order.

Petitioner, a citizen of Spain, entered the United States as a lawful permanent resident in 1953, before his second birthday. (ECF # 17 pg. 1; ECF #9-1 ¶ 5). Petitioner served in the United States Marine Corps from 1969 to 1971 and was honorably discharged after returning from Vietnam. (ECF # 17 pg. 1). Between 1972 to 1980, Petitioner committed a series of offenses leading to his conviction and sentence of two consecutive life terms for Aggravated Murder, a consecutive term of seven to twenty-five years for Attempted Murder and a consecutive term of six months to five years for Escape. (ECF #17 pg. 2; ECF 9-1 pg. 2).

In 1985, immigration authorities issued an Order to Show Cause and Notice Hearing. (*Id.*). Petitioner conceded his deportability in 1989 under former[2] §§ 241(a)(4)[3] and 241(a)(11)[4] of the Immigration and Nationality Act. (*Id.*). An immigration judge denied his application for relief under former § 212(c)[5] of the INA in 1990 and ordered him removed to Spain; the Board of Immigration Appeals ("BIA") affirmed. (*Id.*). Petitioner took no further action until April 2024, when he moved to reopen and stay his removal proceedings before an immigration judge, who denied the motion for lack of jurisdiction. (ECF #9-1 pg. 3). In November 2024, Petitioner applied for a certificate of citizenship with United States Citizenship and Immigration Services, which was later denied.

---

[2] Former § 241 now appears in INA § 237, 8 U.S.C. § 1227. *See* Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA").
[3] INA § 241(a)(4) provided deportation of any noncitizen who, at any time after entry, is convicted of two crimes involving moral turpitude.
[4] INA § 241(a)(11) provided deportation of any noncitizen convicted of a controlled substance violation.
[5] Repealed by the IIRIRA, INA § 212(c) permitted certain noncitizens to apply for a discretionary waiver from deportation.

On April 14, 2025, after forty-five years of incarceration, the Ohio Parole Board granted Petitioner parole and Petitoner was immediately taken into ICE custody. [6] (ECF #17 pg. 2). Ten days later Petitioner again moved to reopen and stay his removal, which the BIA denied. (*Id*.).

Petitioner filed the instant Petition, arguing his continued post-removal order detention is unlawful. (ECF # 1). The Magistrate Judge ordered Respondent to show cause why the Court should not grant the Petition. (ECF # 6). Respondent filed a Return of Writ arguing continued detention is lawful under 8 U.S.C. § 1231(a)(6), supported by a declaration of Deportation Officer Bradley Shaver. (ECF # 9; ECF # 9-1). Petitioner responded and the Magistrate Judge ordered Respondent to file a sur-reply, to which Petitioner provided a brief response. (ECF # 13; ECF # 14). Following the Magistrate Judge's R&R, Respondent filed a timely objection. (ECF # 18).

The matter is now before the Court.

## II. STANDARD OF REVIEW

### A. Review of Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party." (citations omitted)); Fed. R. Civ.

[6] Pursuant to § 1231(a)(1)(B), the removal period for an alien who has been ordered removed but is incarcerated at the time of the removal order, begins on the date an alien is released from state confinement. Accordingly, Petitioner's removal period began on April 14, 2025. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021).

P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

**B. 28 U.S.C. § 2241**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."

While this generally includes challenges by noncitizens in immigration-related matters, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), Congress has statutorily limited the specific circumstances under which district courts may issue writs for noncitizens detained in such matters.

## III. ANALYSIS

Petitioner has been detained for over 16 months with no firm removal date and now seeks release through a writ of habeas corpus.

The Magistrate Judge recommends the Court grant the Petition. Respondent objects on three grounds: (1) the Magistrate Judge erred in finding no significant likelihood that Petitioner will be removed to Spain or a third country; (2) the Magistrate Judge disregarded the risk that Petitioner will commit further crimes; and (3) the Magistrate Judge failed to address Petitioner's claims regarding medical care. (ECF #18).

The Court finds no error in the Magistrate Judge's findings. Respondent has failed to rebut Petitioner's showing that good reason exists to believe there is no significant likelihood of removal in the reasonably foreseeable future. The Court does not reach Respondent's third

objection regarding medical care, as Petitioner withdrew that claim before the Magistrate Judge issued the R&R. (ECF # 11 pg. 4).

For the reasons set forth below, Respondent's objections are **OVERRULED** and the Court **ADOPTS AND ACCEPTS** the R&R, including the Court's ultimate resolution of the Petition.

**A. Federal Law on Post-Removal Order Detention**

1. Statutory Framework and Constitutional Constraints

Petitioner is detained under 8 U.S.C. § 1231, which governs the detention, release and removal of individuals ordered removed. The statute affords the DHS[7] Secretary 90 days from the date a removal order becomes administratively final to remove a noncitizen from the country, i.e., the removal period. *Id.* § 1231(a)(1)(A), (B)(i).

8 U.S.C. § 1231(a)(6) governs detention beyond that 90-day period. By its very terms, it applies to three categories of noncitizens: (1) those ordered removed who are inadmissible under 8 U.S.C. § 1182; (2) those ordered removed who are removable under 8 U.S.C. § 1227; and (3) those ordered removed whom the Secretary determines to pose a risk to the community or a flight risk. *Clark v. Martinez*, 543 U.S. 371, 377, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005).

Congress set no limit on the length of such detention. Nevertheless, the Supreme Court held in *Zadvydas v. Davis* that the Executive Branch may not detain a noncitizen indefinitely pending removal. 533 U.S. 678 (2001). Confronting the "serious question" whether the Constitution permits detention that is "indefinite and potentially permanent," *id*. at 696, the Court construed § 1231(a)(6) to "limit an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689.

---

[7] While 8 U.S.C. § 1231 explicitly refers to the Attorney General as having enforcement and detention authority, Congress transferred these functions to the Secretary of Homeland Security through the Homeland Security Act of 2002.

To effectuate this "reasonableness" standard, *Zadvydas* established a burden-shifting framework. After the 90-day removal period, the government may continue to detain an alien who poses a flight risk or a "danger to the community" for up to six months. Once six months have passed without removal, the noncitizen may "provide good reason to believe that no significant likelihood of removal exists in the reasonably foreseeable future." If the noncitizen makes that showing, the burden shifts to the government to rebut with sufficient evidence.

The six-month presumption does not entitle every noncitizen to release; they may be detained until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. Notably, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink. *Zadvydas* unequivocally held that once removal is no longer reasonably foreseeable, continued detention is no longer authorized.

Still, the *Zadvydas* framework leaves several questions unresolved. The Court did not specify what kind or quantity of evidence a petitioner must offer to show that removal is not reasonably foreseeable, nor what evidence the government may use to rebut that showing. The Court merely noted that "the six-month presumption of reasonableness [for postremoval detention] is merely a tool to 'guide lower courts' in making those 'determinations.'" *Zadvydas*, 533 U.S. at 700-701.

2. Implementing Regulations and Custody Review Process

DHS responded to *Zadvydas* by promulgating regulations to implement the newly established constitutional constraints. 8 C.F.R. § 241.4; 66 Fed. Reg. 56967, 56969 (Nov. 21, 2001) (explaining the *Zadvydas* decision and stating that the new regulations were issued to provide a process for DHS to determine whether there is a significant likelihood of removal in

the reasonably foreseeable future). These regulations confer procedural safeguards on noncitizens detained beyond the removal period to ensure compliance with due process and because they confer such rights, DHS is bound to follow them. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S. Ct. 499, 98 L. Ed. 681 (1954); *see Morton v. Ruiz*, 415 U.S. 199, 235, 94 S. Ct. 1055, 39 L. Ed. 2d 270 (1974) (requiring agency compliance with unpublished agency rules and manuals); *see also Hammouda v. Dep't of Homeland Sec.*, 2026 U.S. Dist. LEXIS 6602, *9.

Under these regulations, the District Director must conduct a post-order custody review ("POCR") before the 90-day removal period expires if removal cannot be accomplished within that period. 8 C.F.R. § 241.4(k)(1)(i). In conducting the POCR, officials must review the noncitizen's records and any documents the noncitizen submits and must inform the noncitizen of the resulting decision. 8 C.F.R. § 241.4(h)(1). The 90-day POCR evaluates three criteria: (1) flight risk; (2) danger to the community; and (3) likelihood of obtaining travel documents. 8 C.F.R. § 241.4(e)&(f). Based on this review, the District Director or Director of the Detention and Removal Field Office decides whether to release the noncitizen or continue detention pending removal or further review. § 241.4(k)(1)(i).

If a noncitizen has cooperated with the removal process but remains neither released nor removed after the initial POCR, he or she receives a second review once 180 days have elapsed since the removal period began. The Headquarters Post-Order Detention Unit ("HQPDU") conducts this review and considers whether there is a significant likelihood of removal exists in the reasonably foreseeable future. 8 C.F.R. § 241.13. That determination depends on several factors, including whether the government's efforts, the receiving country's willingness to cooperate and other relevant factors make it reasonable to believe travel documents can be

obtained. 8 C.F.R. § 241.4(e), (f). If the HQPDU determines that removal is not likely in the foreseeable future, it must release the noncitizen unless continued detention is justified by a special circumstance.

§ 241.14 identifies four categories of noncitizens who may be detained beyond 180 days even absent a significant likelihood of removal: (1) those with a highly contagious disease that threatens public safety; (2) those whose release would have serious adverse foreign policy consequences; (3) those detained on security or terrorism grounds; and (4) those determined to be especially dangerous. 8 C.F.R. § 241.14. Certifying a noncitizen under any of these categories requires substantial factual support and the determination must be made by an immigration judge or by the concurrence of senior government officials. *Id*.

**B. Petitioner's Likelihood of Removal According to *Zadvydas***

Turning to the merits of the Petition, it is undisputed that Petitioner's detention has surpassed the presumptively reasonable six-month period. The Magistrate Judge's R&R determined that Petitioner met his burden under *Zadvydas* to establish that his removal to Spain or a third country is not likely in the reasonably foreseeable future and that Respondent failed to sufficiently rebut that showing. Respondent objects, arguing that the Magistrate Judge incorrectly determined the Petitioner met his burden.

Like the petitioners in *Zadvydas*, Petitioner is in a removable-but-unremovable limbo: he is legally removable, but practically unremovable without a valid travel document. That gap puts his post-removal order detention along this yardstick between "reasonably foreseeable" and "effectively indefinite" that *Zadvydas* left for district courts to measure. *Man Bohadur Das v. Mullin*, 2026 U.S. Dist. LEXIS 173193, *26 (2026). The role that a district court must play in that measurement is clearly prescribed: "We live in a country where the Rule of Law is

paramount and it is the province of the federal judiciary to ensure that the government obeys the law, particularly when it chooses to deprive someone of their liberty." *Mbonga v. Raycraft*, 809 F. Supp. 3d 762, 765 (N.D. Ohio 2025).

The Court agrees with the Magistrate Judge's determination that, on this record, Petitioner has shown good reason to believe his removal is not reasonably foreseeable to Spain or a third country.

1. Likelihood of Removal to Spain

The Magistrate Judge determined Petitioner's removal to Spain is not likely in the reasonably foreseeable future and that Petitioner met his burden under *Zadvydas*. Respondent's first objection asserts that the Magistrate Judge improperly found "it was not significantly likely Petitioner would be removed to Spain or a third country." The objection itself, however, addresses only the likelihood of third country removal and says nothing about the Magistrate Judge's findings regarding Spain. The Court therefore deems that portion of the objection waived. *See Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) (an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution is not an 'objection' as that term is used in this context). The Court nevertheless addresses whether the Magistrate Judge correctly determined that Petitioner met his burden as to Spain.

Petitioner's initial showing is straightforward: he has been detained well beyond[8] the presumptively reasonable six-month period; he could not return to Spain after his travel document was issued and then revoked, and the government has taken no steps to effectuate his removal to Spain or to identify a third country for removal. Respondent argues this showing was insufficient to shift the burden, relying on three factually distinguishable cases for the

[8] Petitioner has been detained for 506 days, as of the date of this Order.

proposition that Petitioner has identified no factual or particular legal basis to believe that he will not be removed in the reasonably foreseeable future. To be sure, *Zadvydas* does not define what either party must produce to meet its burden, therefore, the Court looks to other cases in our Circuit to instruct the analysis.

In *Woldeghergish v. Lynch*, the magistrate judge's report and recommendation followed the framework in *Ahmed v. Brott*, which identified broad categories of cases in which courts have found a significant likelihood that removal is not reasonably foreseeable, three of which apply here: (1) where the detainee is stateless and no country will accept him; (2) the detainee's country of origin refuses to issue a travel document; and (3) no repatriation agreement between the detainee's native country and the United States. 2025 U.S. Dist. LEXIS 270488, *26-27 citing *Ahmed v. Brott*, No. CIV. 14-5000, 2015 U.S. Dist. LEXIS 45346, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), report and recommendation adopted, No. CIV. 14-5000, 2015 U.S. Dist. LEXIS 45017, 2015 WL 1542155 (D. Minn. Apr. 7, 2015). The court adopted the magistrate judge's determination based on those factors, holding that the petitioner had met his burden based on the length of his detention and his country of origin's refusal to accept its removable nationals. 2026 U.S. Dist. LEXIS 4236, *12. This reasoning applies with equal force here: Petitioner is effectively stateless and Spain has blocked his removal. It is imperative to emphasize that under *Zadvydas*, a petitioner's burden is not to prove removal is impossible, but only to provide a good reason to believe that removal is not significantly likely in the foreseeable future. Petitioner has cleared that bar. The burden accordingly shifts to Respondent.

Respondent offers three factually inapposite cases and a bare assertion from a deportation officer that does not address the timing concerns central to *Zadvydas* or provide any evidence to support that they are in fact "working to facilitate removal." The Court will follow other

holdings in our Circuit that have determined prior requests for travel documents along with conclusory statements that removal was likely in the foreseeable future is not enough to rebut a petitioner's showing. *See Masheli*, 2026 U.S. Dist. LEXIS 12007 at *9-10 (the respondents failed to refute the petitioner's showing because "Respondents' sole evidence is the assertion that a travel document has been requested more than five months ago and that there is a 'significant likelihood of removal in the reasonably foreseeable future'") (citation omitted); *Tarkhorani*, 2026 U.S. Dist. LEXIS 29525 at *7 (the respondents failed to refute the petitioner's showing because "[t]here is nothing before the Court to suggest that the Iranian government is expected to issue travel documents to Petitioner in the near future . . . [, or] that the process of removal to a third country will be resolved [soon]"); *Kai Yu*, 2026 U.S. Dist. LEXIS 26419 at * 7 (the respondents failed to refute the petitioner's showing because (1) "Respondents' sole evidence is the assertion that after the failed attempt to remove Petitioner . . . , 'ICE Headquarters submitted an updated [travel document request] to the Chinese Embassy'"; (2) "Respondents do not indicate that they have received anything from the Chinese Embassy as of the date they filed their response"; and (3) "Respondents acknowledge that the process 'historically can be prolonged'") (citations omitted). *Thabateh v. King*, 2026 U.S. Dist. LEXIS 91349, *11-12 (2026).

The lackluster record Respondent has built raises more questions than answers: Why did the effort to Spain fail - because Spain will not accept him, because the government cannot procure travel documents, or something else entirely? Has the Government had any further contact with the Spanish consulate since the travel document was revoked a year ago?[9] Is

[9] The Court notes it is difficult to obtain accurate data for criminally convicted noncitizens repatriations to Spain, as DHS has not updated the statistics since January 2025. According to the available data from fiscal year of 2025, 13 noncitizens were removed to Spain and 49 were removed in fiscal year 2024. When nations hinder DHS removal efforts by not accepting the return of their nationals by scheduled commercial or charter flights, or by untimely issuance of travel documents, DHS may designate them as recalcitrant, or uncooperative. Because Spain does not appear to be designated as a recalcitrant country, it is unclear why DHS has not attempted to obtain new travel documents since July 2025. https://www.ice.gov/statistics

removal to Spain likely at any identifiable point in the future? The Magistrate Judge correctly looked at Respondent's showing with skepticism. Respondent's filings are extraordinarily vague, leaving the Court to speculate on the very facts that are needed to evaluate whether removal is reasonably foreseeable. Respondent's response, therefore, falls well short of rebutting Petitioner's showing.

Accordingly, Respondent's objection is **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's analysis of and conclusions that Respondent failed to meet their evidentiary burden under *Zadvydas* and Petitioner's removal to Spain is not likely in the reasonably foreseeable future.

2. Likelihood of Removal to Third Country

Petitioner alleges that, after his removal to Spain became unlikely, he suggested Guatemala as a third country for removal and received no response from ICE. The Magistrate Judge determined that Petitioner's removal to a third country is not likely in the reasonably foreseeable future. Respondent objects, arguing that the burden never shifted because Petitioner "offered no facts indicating that he will not be removed to a third country" and that the absence of a travel date does not render removal not reasonably foreseeable.

Again, Petitioner's showing is straightforward: after Spain prevented Petitioner's removal the Government has taken no steps in the last year to remove him to a third country. Spain's foreclosure of Petitioner's removal leaves third-country removal as the only remaining avenue - one ICE has seemingly not explored. Petitioner has met his burden under *Zadvydas* and the burden shifts to Respondent.

Despite the twelve months since Spain refused to accept Petitioner, Respondent identifies no third country and explains no steps taken to arrange Petitioner's removal. As to Guatemala

specifically, Respondent does not address Petitioner's suggestion at all. Respondent instead cites *Jiang Lu* for the proposition that the absence of a secured travel date does not mean third-country removal is not in the reasonably foreseeable future. (ECF # 9 pg. 5; ECF # 18 pg. 4). *Jiang Lu* does not rebut Petitioner's showing because the issue here is not whether a date has been secured, rather, the apparent lack of any effort to effectuate Petitioner's removal. More problematic still is the lack of transparency about what efforts, if any, have been made. Respondent once more asks the Court to rely on a deportation officer's stated intent to remove Petitioner at some future point. This assurance says nothing about the likelihood of removal to a third country, let alone a specific one. The Court is not persuaded that removal to a third country is likely in the reasonably foreseeable future on this record and agrees with the Magistrate Judge that Respondent failed to meet its burden under *Zadvydas*.

Accordingly, Respondent's objection is **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's analysis of and conclusions that Respondent failed to meet their evidentiary burden under *Zadvydas* and Petitioner's removal to a third country is not likely in the reasonably foreseeable future.

**C. Petitioner's Risk of Committing Further Crimes**

Having adopted the Magistrate Judge's conclusions as to removal to Spain and to a third country, the Court turns to whether Petitioner poses a danger to the public sufficient to justify continued detention despite the absence of any significant likelihood of removal in the reasonably foreseeable future.

The Magistrate Judge determined that Petitioners convictions for "multiple, serious offenses, including aggravated murder," could, in principle, justify extended detention on dangerousness grounds. (ECF #17 pg. 8). The Magistrate Judge reasoned, however, that

because the Ohio Parole Board's determination that Petitioner was suitable for supervised release allayed that concern, since Petitioner remains subject to both state supervision and ICE supervision. (ECF #17 pg. 8). Respondent objects, arguing the Magistrate Judge improperly disregarded Petitioner's risk of committing further crimes, in a manner contrary *Zadvydas*. (ECF #18 pg. 4-5).

Respondent contends that *Zadvydas* requires a habeas court to independently assess whether a petitioner will commit further crimes. (*Id.*). The authority Respondent cites for this proposition, however, confirms a different sequence: a habeas court's threshold inquiry is whether removal is reasonably foreseeable. If it is not, the government's authority to detain has expired and the court must order release. Only if removal is reasonably foreseeable does the risk of further crimes become relevant, but only as one discretionary factor among several that may justify continued confinement within that reasonable removable period. In any event, the Magistrate Judge *did* independently assess Petitioner's risk of future crimes; he did not, as Respondent suggests, simply substitute the Ohio Parole Board's judgment for his own. Working from the limited record before him, the Magistrate Judge reasonably concluded that Petitioner's state and federal supervision mitigated that risk.

Respondent's position that Petitioner may be detained for as long as it takes to remove him is indistinguishable from the argument the government made and lost in *Zadvydas*. (ECF # 18 pg. 3; ECF # 9 pg. 4; ECF # 9-1 pg. 3). That argument failed before the Supreme Court and it fails here for the same reason. *Zadvydas* involved two petitioners: one with a "long criminal record" and a "history of flight," and another convicted of manslaughter in connection with a gang-related shooting. 533 U.S. at 684-86. The Court granted both petitions despite their criminal histories because removal was not reasonably foreseeable for either petitioner.

Petitioner's criminal history does not warrant a different result here. Because Respondent's dangerousness argument cannot rest on *Zadvydas* itself, the Court looks to the record for support and finds none.

On July 8, 2025, ICE completed the 90-day POCR and continued Petitioner's detention on the ground that it was in the process of securing a travel document to Spain. (ECF # 9-1 pg. 3). That determination finds some support in the record, as Petitioner was in fact issued a travel document later that month. On September 27, 2025, ICE initiated another POCR. (*Id.*). The deportation officer's declaration dated December 5, 2025, states only that the review was initiated on that date, meaning 69 days had passed between the initiation and the officer's declaration with no indication that the review had been concluded or the result. (*Id*. pg. 4). The 180-day POCR asks whether a significant likelihood of removal exists in the reasonably foreseeable future. If not, the noncitizen may still be detained only upon a finding that he meets one of four "special circumstance" criteria previously discussed.[10] 8 C.F.R. § 241.14. Respondent's dangerousness argument appears to invoke the fourth category, that Petitioner is "especially dangerous," but the regulation sets a demanding standard: the government must prove that the petitioner (1) has previously committed one or more crimes of violence as defined in 18 U.S.C. § 16; (2) is likely, due to a mental condition or personality disorder, to engage in future acts of violence; and (3) cannot be safely released under any conditions. 8 C.F.R. § 241.14(f). Respondent has made no attempt to satisfy any element of this standard, let alone all three.

[10] 8 C.F.R. § 241.14 identifies four categories of noncitizens who may be detained beyond 180 days even absent a significant likelihood of removal: (1) those with a highly contagious disease that threatens public safety; (2) those whose release would have serious adverse foreign policy consequences; (3) those detained on security or terrorism grounds; and (4) those determined to be especially dangerous.

What concerns the Court is not simply Respondent's continued lack of transparency, but that Respondent's entire dangerousness argument rests on the claim that the Magistrate Judge erred in his determination without offering any evidence that would support the finding Respondent insists should have been made instead. Did ICE ever determine that Petitioner's removal was not reasonably foreseeable? If so, and if Respondent nonetheless considers Petitioner too dangerous for release, did Respondent hold the hearing that 8 C.F.R. § 241.14(h) requires before making such a finding? On this record, or rather, its absence, Respondent's conduct disregards the *Zadvydas* Court's explicit guidance that "[i]n cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger." 533 U.S. at 691.

Setting aside these procedural failures, Respondent's conclusory assertions that removal is "expected in the reasonably foreseeable future" and that Petitioner "would pose a danger to society" if released are again unaccompanied by any factual support or explanation. Such bare assertions come close to a pretextual formality rather than the individualized review that due process demands. The POCR process exists precisely to ensure meaningful, case-specific review, because the interest at stake is "the most elemental of liberty interests — the interest in being free from physical detention." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

The Court does not discount the government's interest in protecting the public, nor does it take lightly Respondent's warning that Petitioner remains a danger to the community. But a generalized interest in preventing danger to the community cannot, standing alone, justify indefinite civil detention. *Zadvydas* makes clear that civil detention becomes impermissibly

punitive once it grows potentially permanent or indefinite once its stated purpose, effectuating removal, is no longer practically attainable.

The Court will not find Petitioner to be so dangerous to the community as to justify his continued detention where Respondent has failed to comply with the very regulations *Zadvydas* prompted DHS to promulgate to prevent the indefinite deprivation of liberty without procedural safeguards.

## IV. CONCLUSION

For the reasons stated above, Respondent's objections have been **OVERRULED** and the R&R (ECF # 17) is **ADOPTED**, including the Court's ultimate resolution of the Petition. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 is **GRANTED**.

Respondent is ordered to release Petitioner from detention. This Order does not determine what "release conditions" may be appropriate for the Petitioner's "supervision." *Zadvydas*, 533 U.S. at 696.

The Court orders Respondent to file a status report within five days of the date of this Court's Opinion and Order to certify compliance.

**IT IS SO ORDERED.**

**/s Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: September 2, 2026**